Dear Mr. Gaudin:
On behalf of the St. Landry Parish Economic and Industrial District ("SLEIDD" or the "District"), you requested the opinion of this office concerning a proposed revenue bond issue of the District to encourage the acquisition of land and to induce the location of a major warehouse and distribution facility in St. Landry Parish (the "Project"). You advised that the District will acquire the land and future facilities and lease it for payments sufficient to pay debt service on the bonds, plus other payments. The Company will be offered certain incentives, including the negotiation of a payment in lieu of taxes in an amount less than what the ad valorem taxes would be if the Project were owned by the Company, for the term of the lease and any extensions. You advised that the bonds would be issued under the authority of R.S. 33:130.361, et seq., the District's enabling legislation, as well as R.S. 39:991, et seq.
Your questions are (i) may the project be exempt from the tax rolls while owned by the District, and (ii) may the District negotiate a payment in lieu of taxes during the term of the lease and any extensions thereof in an amount less than what would be paid in taxes if the Project were on the tax rolls.
R.S. 33:130.361 creates the District as a body politic and political subdivision of the state and established it for the primary object and purpose of promoting and encouraging the development of economic and industrial opportunities, stimulating the economy through renewed commerce and industry, and for the utilization and development of natural and human resources of the area by providing job opportunities. La. R.S. 33:130.364 sets forth the District's powers, in pertinent part as follows:
 A. (1) The district shall have the power to construct and acquire facilities, including the acquisition of sites and other necessary property or appurtenances thereto within the district . . . and to acquire, construct, improve, operate, maintain, and provide improvements and services necessary therefor, including but not limited to roads, street lighting, bridges, rail facilities, drainage, sewerage disposal facilities, solid waste disposal facilities, waterworks and other utilities and related properties.
 (2) The district also has the authority to sell, lease, or otherwise dispose of, by suitable and appropriate contract, to any enterprise locating or existing within the district all or any part of a site, building, or other property owned by the district. In determining the consideration for any contract to lease, sell, or otherwise dispose of lands, building, or other property of the district, the board of commissioners may take into consideration the value of the lands, buildings, or other properties involved as well as the potential value of the economic impact of the enterprise being induced to locate or expand within the district. Such economic impact shall include increased employment, increased use of local labor, wages and salaries to be paid, consumption of local materials, products, and resources, and special tax revenues to be generated by the enterprise acquiring or leasing lands, buildings, or other property from the district. (Emphasis supplied)
To fulfill its purposes the District is authorized to incur debt and issue bonds. R.S. 33:130.366 specifically authorizes the District to issue revenue bonds for the purposes for which the district is created, in the manner provided in R.S. 39:991
through 1024. R.S. 39:991, et seq., authorizes the issuance of revenue bonds by certain public bodies to encourage the location of or addition to industrial enterprises located therein or adjoining thereto. La. R.S. 39:996 provides in pertinent part as follows:
 Prior to the issuance of any bonds under this Part, the municipality shall lease, sublease or agree to sell the project to a lessee, sublessee or purchaser under an agreement conditioned upon completion of the project and providing for payment to the municipality of such rentals or installment payments as will be sufficient (a) to pay the principal of and interest on the bonds issued to finance the project, (b) build up and maintain any reserve deemed by the governing body to be advisable in connection therewith, and (c) unless the contract obligates the lessee, sublessee or purchaser to pay for the maintenance and insurance of the project, to pay the cost of maintaining the project in good repaid and keeping it properly insured. Such lease, sublease or agreement of sale shall be made upon such other terms and conditions and for the time which may be determined by the municipality and may contain provisions authorizing the purchase of the entire leased property . . . . If title to the project is in the municipality, the municipal corporation may specifcally require as a condition under the lease agreement, that the lessee of each of the projects of said municipal authority shall pay annually to the appropriate taxing authority, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such authorities for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made. (Emphasis supplied)
Thus, in answer to your first question, if the District issues revenue bonds under the authority of R.S. 39:991, et seq., and if prior to the issuance the District has entered into a lease agreement which contains the conditions set forth in R.S. 39:996, and if the District retains title to the property, the District may include a provision in such lease that the lessee shall pay a sum in lieu of ad valorem taxes. Any such agreement must be approved by the State Bond Commission. R.S. 39:997.
While perhaps not directly on point, note should be taken of R.S.39:1405.2 which provides as follows:
 The State Bond Commission shall not issue any bonds or approve the issuance of any tax exempt bonds of any public entity when the project beneficiary is an entity whose property would otherwise be subject to ad valorem taxation and when the terms of such bonds or any agreements related thereto provide that no payments shall be made by that project beneficiary in lieu of ad valorem taxes, unless sufficient evidence is presented to the State Bond Commission that each affected tax recipient parish and municipal governing authority and school board has been notified and given the opportunity to comment in a public hearing upon any proposal which would waive such payments in lieu of property taxes.
Your second question is whether the payment in lieu of taxes may be less than the amount the lessee would otherwise pay were the lessee to have title to the building.
As quoted above, R.S. 39:996 merely prohibits the arrangement from being an amount higher than what the lessee would pay if the lessee owned the building and does not prohibit the lessee paying a lesser amount. R.S. 33:130.364(A)(2), as quoted with emphasis above, sets forth certain factors the District may consider in determining the consideration for the lease, which presumably may also be considered in determining the amount of the payment in lieu of ad valorem taxes. Of course, the payment cannot be structured such that it constitutes a donation of public funds in violation of Article VII, Section 14 of the Louisiana Constitution.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH/